**SO ORDERED: October 03, 2007.**



**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LAWRENCE UTILITIES, LLC, | ) | Case No. 07-07454-JKC-11 |
| | ) | |
| Debtor. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE CITY OF LAWRENCE'S MOTION TO ABSTAIN OR, IN THE ALTERNATIVE, TO DISMISS

This matter comes before the Court on the City of Lawrence's Motion to Abstain or, in the Alternative, to Dismiss (the "Motion") Debtor Lawrence Utilities, LLC's Chapter 11 petition. The Court conducted a hearing on the Motion on August 31, 2007, and took the matter under advisement. On September 14, 2007, the Court issued an Order indicating that it was unable to comply with the time constraints set forth in 11 U.S.C. § 1112(b)(3) due to "compelling circumstances." Having had adequate time to review the parties pleadings and briefs, the Court now issues the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1.      Lawrence Utilities, LLC ("Debtor") is an Indiana Limited Liability Company formed

in 2001.  One hundred percent of its membership units are owned by Integrated Resources, LLC ("Integrated Resources"), another Indiana limited liability company.

2. On July 1, 2001, the City of Lawrence (the "City") entered into an operating agreement ("Operating Agreement") transferring the exclusive right to control and operate cash and non-cash assets of the City's municipal water and sewer utilities to Lawrence Utilities, LLC ("Debtor") for an initial term of twenty years.  The Operating Agreement was executed by the City's then-mayor, Thomas Schneider.

3. Debtor has no employees of its own.  Rather, Integrated Resources provides Debtor with personnel and management services for a monthly fee.  Integrated Data, LLC, another Indiana limited liability company, provides billing and other services to Debtor for a monthly fee.

4. In August of 2003, Debtor incurred an industrial revenue bond obligation to Fifth Third Bank ("Fifth Third") in excess of $11 million.  Debtor used the money to pay off prior bond obligations to the City and to fund capital improvements to the utilities' infrastructure.

5. In November of 2003, a new mayor was elected for the City.  On April 23, 2004, the City and a citizen ratepayer filed suit against Debtor in Marion Superior Court (the "State Court"), under Cause No. 49D10-0411-PL-002105, claiming that the Operating Agreement violated Indiana's public bidding laws (the "State Court Litigation").

6. On November 1, 2005, the State Court granted partial summary judgment in favor of the City and declared the Operating Agreement void under public policy grounds (the "State Court Order").  By that same order, the State Court stayed further proceedings in the State Court Litigation and ordered the parties to mediate.

7. Notwithstanding the stay, the City filed a Motion for the Appointment of Receiver

in the State Court Litigation (the "Receiver Motion") , on November 8, 2005, wherein the City argued, inter alia, that a receiver should be appointed because Debtor was "in imminent danger of insolvency."

8.  In the meantime, Debtor appealed the State Court Order to the Indiana Court of Appeals. The appeal is currently substantially–if not fully–briefed and presumably ready for disposition. Both Debtor and the City agree that the appeal can go forward notwithstanding the Bankruptcy Code's automatic stay.

9.  The parties were unsuccessful in their attempts to mediate the State Court Litigation. Mediation ended, without settlement, in July of 2007.

10.  On July 3, 2007, at the City's request, the State Court lifted its previously imposed stay and then scheduled a hearing on the Receiver Motion for early September. In advance of that hearing, the City commenced discovery and noticed at least sixteen separate depositions of Debtor, its affiliates and parent entities, various employees of Integrated Resources and seven of the nine members of the City's Common Council. The Indiana Court of Appeals also lifted its own stay on July 19, 2007, in light of the parties' failure to resolve their dispute through mediation.

11.  On August 8, 2007, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The petition was filed on the same day that Debtor's designated representative under Indiana Trial Rule 30(B)(6) was to be deposed. Pursuant to 11 U.S.C. § 362(b), the State Court Litigation was stayed.

12.  Notwithstanding the State Court Order, Debtor has continued to operate pursuant to the Operating Agreement and has made all required payments to the City.

13.  In response to the petition, the City filed its Motion, asking that the Court either

3

abstain from the case pursuant to 11 U.S.C. § 305 or dismiss the case pursuant to 11 U.S.C. § 1112(b).

## Conclusions of Law

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.  In its Motion, the City first argues that the Court should abstain from exercising jurisdiction over Debtor's case pursuant to 11 U.S.C. § 305. That section provides in relevant part that "[t]he Court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors *and* the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1) (italics added).

3.  The City presented ample argument as to why its own interests would be better served by abstention but little, if any, on how Debtor or the rest of the creditor body's interests would be better served. Accordingly, the Court summarily denies the City's request that it abstain from exercising jurisdiction over Debtor's case.

4.  The City next argues that the case should be dismissed "for cause" under 11 U.S.C. § 1112(b). That section provides in relevant part:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that–
> (A) there is a reasonable likelihood that a plan will be confirmed within the

timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)–
(i) for which there exists a reasonable justification for the act or omission; and
(ii) that will be cured within a reasonable period of time fixed by the court.
\* \* \* \* \*
(4) For purposes of this subsection, the term "cause" includes–
(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
(B) gross mismanagement of the estate;
(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
(E) failure to comply with an order of the court;
(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
(K) failure to pay any fees or charges required under chapter 123 of title 28;
(L) revocation of an order of confirmation under section 1144;
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

5.  In support of its Motion, the City contends that "cause" exists under Code § 1112(b)(4)(A), (B), (D) and (M) and further argues that the petition should be dismissed because it was filed in "bad faith." As the movant, the City must show by a preponderance of the evidence that cause for dismissal exists. *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir.1994); *Matter of Love*, 957 F.2d 1350, 1356 (7th Cir.1994). With that standard in mind, the Court addresses each

of the City's arguments in turn.

6. Code § 1112(b)(4)(A) provides that "cause" includes a "substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation." Italics added. With respect to the first part of this provision, the City appears to argue both sides of the coin: On one hand, the City insists that Debtor is not currently in financial distress and has more than ample income to pay its obligations under the Operating Agreement and to service its indebtedness to Fifth Third. On the other hand, the City directs the Court to evidence suggesting that Debtor is in financial distress and that its liabilities are greater than its assets. Given these contrary positions, the City has not shown *by a preponderance of the evidence* that Debtor's estate is suffering from a "substantial or continuing loss" as required by § 1112(b)(4)(A). Whether Debtor has a reasonable likelihood of rehabilitating, then, is irrelevant.

7. The City also argues that Debtor's gross mismanagement warrants dismissal pursuant to § 1112(b)(4)(B). In support of that argument, the City points exclusively to Debtor's management of its business pre-petition. Section 1112(b)(4)(B), however, states that gross mismanagement *of the estate* warrants dismissal. "This example focuses on the estate, not the debtor. Accordingly, mismanagement of the debtor prior to the bankruptcy filing is not dispositive." 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[5][d], at 1112-44 (15th ed. rev.2004). In contrast, Code § 1104(a)(1) defines "cause" for the appointment of a Chapter 11 trustee to include the "gross mismanagement of the affairs of the debtor by current management, *either before or after the commencement of the case*."[1] Italics added.

---

[1] The Court is somewhat perplexed with the City's "gross mismanagement" allegations. Those allegations focus primarily on Debtor's transactions and contracts with its insiders. Arguably, Debtor may be paying too much for certain services, but given that Debtor has–at least pre-petition–met its obligations to the City and Fifth Third, the Court does not understand the City's position. If the City believes that Debtor

6

8.   Pursuant to § 1112(b)(4)(D), the City also argues unpersuasively that the petition should be dismissed because of Debtor's alleged "unauthorized use of cash collateral substantially harmful to 1 or more creditors." This subsection of § 1112(b) addresses a debtor's use of "cash collateral"–presumably as that term is used in 11 U.S.C. § 363–without court permission. 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[5][f], at 1112-45. There is no evidence before the Court to suggest that Debtor is currently using "cash collateral" without court permission. Rather, the City's argument focuses on prepetition payments and loans made by Debtor to certain insiders, including Integrated Resources and Integrated Data. This, however, does not appear to be the proper focus of § 1112(b)(4)(D).

9.   Finally, The City points to Debtor's inability to effect substantial consummation of a confirmed plan pursuant to § 1112(b)(4)(M). This "cause" presumes that a plan has been confirmed and is patently inapplicable here.

10.   In support of its Motion, the City also argues that dismissal is warranted based on Debtor's alleged "bad faith." While § 1112(b) permits involuntary dismissal or conversion for a non-exhaustive list of sixteen grounds, its general authority to dismiss "for cause" has also engendered the development of common-law grounds for dismissal. Accordingly, federal courts have created a good-faith filing requirement for debtors opposing dismissal or conversion under § 1112(b). *See In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994); *In re Laguna Assoc's. Ltd. P'hip,* 30 F.3d 734, 737-38 (6th Cir.1994); *In re Integrated Telecom Express,* 384 F.3d 108, 118 (3d Cir.2004); *In re Int'l Oriental Rug Ctr.,* 165 B.R. 436, 442 (Bankr.N.D.Ill.1994); *In re N.R. Guaranteed Ret.,*

---

is making too much profit, then it presumably should take some action to reduce utility rates. It is unclear how the State Court Action will address that part of the problem, if there is indeed one.

112 B.R. 263, 270-71, 279 (Bankr.N.D.Ill.1990) (quoting *In re Madison Hotel Assoc's,* 749 F.2d 410, 426 (7th Cir.1984)); *In re Gleason,* 2002 WL 570647, at *1 (N.D.Ill.2002); *Quarles v. U.S. Trustee,* 194 B.R. 94, 96 (W.D.Va.1996); *In re Citi-Toledo Partners,* 170 B.R. 602, 607 (Bankr.N.D.Ohio 1994); *Love*, 957 F.2d at 1354 (bad faith also cause for dismissal in Chapter 13 cases); *Matter of Little Creek Dev. Co.,* 779 F.2d 1068, 1071-72 (5th Cir.1986).

11. To make the requisite showing, the movant need not show, though it would be relevant, that the debtor had any sort of fraudulent or malicious intent or scheme in mind when filing; "malfeasance is not a prerequisite to bad faith." *In re Leavitt,* 209 B.R. 935, 940-41 (9th Cir. BAP 1997), *affirmed,* 171 F.3d 1219 (9th Cir.1999). Indeed, some courts have noted that focusing on terms such as good or bad faith in filing is misleading to some degree, *see, e.g., In re Huckfeldt,* 39 F.3d 829, 832 (8th Cir.1994), as the question is really whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented "tactical reasons unrelated to reorganization." *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994); *see Integrated Telecom Express,* 384 F.3d at 119-20; *N.R. Guaranteed Ret.,* 112 B.R. at 271. Thus, § 1112(b)'s requirement that a petition be filed in good faith is not concerned only with sanctioning the filer's subjective intent but also considers whether the Chapter 11 remedy is being utilized for the limited purposes intended. *See Integrated Telecom Express,* 384 F.3d at 122-29; *N.R. Guaranteed Retirement,* 112 B.R. at 271. In fact, the good-faith filing requirement has been described as a term of art used to limit reorganizational filings to those cases that are within the legitimate objectives of a specialized statute. *See In re Liberate Tech.,* 314 B.R. 206, 211 (Bankr.N.D.Cal.2004).

12. Courts generally consider the totality of circumstances surrounding a variety of

objective and subjective indicators. *See, e.g., In re Stump,* 280 B.R. 208, 214 n. 2 (Bankr.S.D.Ohio 2002); *see also In re Laguna Assoc's Ltd. P'ship,* 30 F.3d 734, 738 (6th Cir.1994); *Integrated Telecom Express,* 384 F.3d at 118. The inquiry often centers around the debtor's bona fide need for a breathing spell to reorganize, *see Liberate Technologies,* 314 B.R. at 211; *N.R. Guaranteed Retirement,* 112 B.R. at 272-73, and this need must be related to the dual purposes of "'preserving going concerns'" and "'maximizing property available to satisfy creditors.'" *Integrated Telecom Express,* 384 F.3d at 119-20, 128-29 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999)).

13.   Debtor has admitted that it filed for bankruptcy to stop the Receiver Motion from going forward in the State Court Litigation and, in particular, to militate against the costs associated with that Motion. Contrary to the City's objection to this tack, the Court does not believe that a bankruptcy petition filed to invoke the automatic stay and stop extra-bankruptcy litigation necessarily constitutes bad faith, especially if such litigation is materially impacting the debtor's ability to operate or preserve the value of its assets. Certainly, in those instances, it is sometimes to everyone's benefit that bankruptcy relief be afforded. Nevertheless, there are those cases where the debtor improperly seeks refuge through the automatic stay simply to frustrate its creditors or delay the inevitable. *See* 7 COLLIER ON BANKRUPTCY, ¶ 1112.07[6][b][i], at 1112-75 ("Because the automatic stay is an important incident o the bankruptcy filing, the bare fact that the debtor desires to obtain the benefits of this element of bankruptcy relief cannot by itself support a finding of bad faith. Rather, the debtor must intend to obtain the benefit for an improper purpose, such as merely to frustrate the rights of creditors rather than to reorganize."). It bears emphasizing, however, that it is often very difficult to distinguish between proper and improper uses of the automatic stay,

9

especially since the stay is "frustrating" to creditors by its very nature.

14.     Here, the State Court Litigation, while costly, did not prevent Debtor from operating or from fulfilling its obligations to the City or Fifth Third.[2] While additional discovery with respect to the Receiver Motion would have led to even more attorney fees and costs, bankruptcy protection seems to be a rather extreme remedy, especially given that Debtor apparently did nothing in State Court to quash the City's arguably onerous discovery requests. Bankruptcy itself has its costs, and if this case were allowed to continue, Debtor's estate would likely foot a rather expensive bill. Thus, the Court finds Debtor's concerns over litigation costs to be somewhat overstated.

15.     Rather, the Court suspects that Debtor filed its petition in a dual effort to secure additional time and leverage against the City. Although the Court sympathizes to some degree with Debtor's plight, it cannot proceed with this case on that basis alone. The Court simply cannot ignore the fact that Debtor's fate rests entirely with the Indiana Court of Appeals. Unless and until the Operating Agreement is deemed valid, Debtor has no business to reorganize and no assets to administer beyond possible fraudulent conveyance actions that, notably, can also be brought in state court. While the bankruptcy case could essentially preserve the status quo until the Indiana Court of Appeals rules, it serves no other significant bankruptcy or reorganizational purpose. Furthermore, even assuming that the Indiana Court of Appeals rules promptly, the losing party will be free to continue with the appellate process, putting the bankruptcy case in indefinite limbo.

16.     For the reasons stated above, the Court concludes that cause exists to dismiss this case for bad faith. While the Court does not find Debtor's intentions to be fraudulent or malicious,

---

[2] Debtor has repeatedly claimed that it has incurred, as of the petition date, $2 million in legal fees in defending the State Court Litigation. The Court finds such figure to be incredibly high for a 2004 lawsuit that was decided on summary judgment and then stayed by both the trial and appellate courts.

it does find that the case does not, under its current facts, serve a legitimate Chapter 11 purpose. In reaching that conclusion, the Court stresses that it is not a given that the City will continue to pursue its Receiver Motion or that the State Court will grant it. Nor is Debtor without an adequate remedy in State Court if the City further presses for further discovery.

17.  The Court must also express a certain degree of consternation over the parties' seemingly endless and costly feud and questions whether the State Court Litigation has or will ultimately serve the City and its ratepayers' best interests. It would appear, for instance, that the City faces its own exposure to Fifth Third and, if the Operating Agreement is terminated, to Debtor. The parties seem fairly well entrenched–perhaps, as has been argued, for political reasons–in their respective positions. In the Court's opinion, however, they[3] would be well advised to put down their weapons and work toward an amiable and reasoned settlement.

18.  The Court will issue a separate Order consistent with the above Findings of Fact and Conclusions of Law.

###

Distribution:

Attorneys of Record
UST

---

[3] By "they," the Court includes the City of Lawrence's Common Council. No explanation was ever given to the Court–despite a direct question to counsel–as to why the Common Council did not intervene in the State Court Litigation or play a more active role in the court-ordered mediation. It seems obvious to this Court, however, that the Common Council must participate in any settlement process if this matter is ever going to be resolved to the City and ratepayers' satisfaction.